**CITY OF KINGSPORT et al.**

v.

**Wayne QUILLEN et al.**

Supreme Court of Tennessee.

July 15, 1974.

Larry R. Dillow and W. E. Weber, Jr., Kingsport, David M. Pack, Atty. Gen., for appellants.

Howard E. Wilson, Wilson, Worley, Gamble, Dodson & Ward, F. Allan Kelly, Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, for appellees.

## OPINION

McCANLESS, Justice.

This case is on direct appeal to determine whether the actions of certain city officials amounted to "willful wrongdoing" so as to bar them from being reimbursed by the city for damages they incurred in a federal civil rights action. The trial court held that the city was obligated to reimburse the city officials. The appellants are Wayne Quillen, a resident of Kingsport, and E. L. Shelor, recorder and treasurer for the City of Kingsport. The Attorney General of Tennessee was made a nominal defendant. The appellees are the City of Kingsport, City Manager Charles K. Marsh, former Mayor Fred J. Gillette, and members of the Board of Mayor and Aldermen: Richard E. Bevington, Elery Lay, J. A. Stout, Charles B. Duke, IV, and Mack B. Gibson.

This case originated in a civil rights action filed in the United States District Court for the Eastern District of Tennessee on March 16, 1970, by Horace V. Curry. The defendants included those who appear in this case as appellees. The suit was to recover damages from the defendants for violating the civil rights of Curry, who is a negro ambulance owner and operator in Kingsport, in the performance of their official duties. The complaint alleged that the city official violated Curry's right to equal protection under the Fourteenth Amendment to the Constitution of the United States by giving special favors and financial aid to his only competitor, a white ambulance owner and operator. On August 17, 1971, the court held in favor of Curry and awarded him compensatory damages totalling $9,668.50, punitive damages of $250.00, and attorney's fees of $1,000.00.

On March 15, 1972, and April 14, 1972, the General Assembly of Tennessee enacted Chapter 266 and Chapter 415, respectively, of the Private Acts of 1972, amending the City Charter of Kingsport so as to permit the city to indemnify city officials from judgments resulting from illegal acts committed in the performance of their official duties.

Chapter 266 provides, in pertinent part:

"SECTION 1. Whenever any elected official or employee of the City of Kingsport shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment or discharge or attempted discharge of his official duties in his employment, the City of Kingsport shall be authorized and required to provide defense counsel for such elected official or employee in such suit and to indemnify him from any judgment rendered against him in such suit; provided, however, that such indemnity shall not extend to any judgment for punitive damages or for damages arising out of any willful wrongdoing by said elected official or employee and provided, further, that such municipal corporation or other political subdivision shall have notice of such suit."

Chapter 415 provides, in part:

"SECTION 1. The City of Kingsport is authorized and required to provide defense counsel for any elected official or employee of the City of Kingsport who has been sued for damages arising out of the performance of his official duties and while engaged in the course of his employment or discharge or attempted discharge of his official duties in his employment and to indemnify him from any judgment rendered against him in such suit. Such indemnity shall not extend to any judgment for punitive damages or for

damages arising out of any willful wrong-doing by said elected official or employee and such municipal corporation shall have notice of such suit. This act shall apply only to such suits which are now pending litigation or final adjudication or any lawsuit which was filed in 1971 or prior to August 3, 1972."

The city officials appealed to the United States Court of Appeals for the Sixth Circuit, who on June 14, 1972, affirmed the judgment as to City Manager Marsh, reversed it as to Alderman Lay, and remanded the case as to the other defendants to determine whether they had acted in good faith and could thus assert as a defense the doctrine of qualified governmental immunity. Curry v. Gillette, 461 F.2d 1003 [6th Cir. 1972].

Shortly after the decision of the Court of Appeals was delivered, the appellant in the present case Wayne Quillen, filed suit in the United States District Court for the Eastern District of Tennessee, seeking a declaration that the above mentioned Private Acts, which were approved by the voters of Kingsport in a referendum on August 3, 1972, were unconstitutional. Quillen also sought to enjoin disbursement of city funds to satisfy the judgments against the city officials. The district court stayed those proceedings so that the parties could have a reasonable opportunity to obtain a decision on these issues from the courts of Tennessee.

On March 5, 1973, the District Court, on remand from the Circuit Court of Appeals, ruled that the city officials did not act with that measure of good faith that would enable them to assert the defense of qualified governmental immunity.

On May 16, 1973, the city officials satisfied that judgment against them in the Curry litigation out of personal funds, then requested that they be reimbursed by the city under authority of Chapters 266 and 415 of the Private Acts for sums amounting to $2,927.81 each. They did not seek reimbursement for the punitive damages. The city treasurer, E. L. Shelor, declined the reimbursements because the Quillen suit was still pending in the District Court at that time.

Shortly after refusal by the treasurer of indemnification, and on May 23, 1973, the city officials filed suit under the Declaratory Judgment Act, Section 23–1101, T.C.A., et seq., seeking an adjudication as to the constitutionality of the Private Acts and as to the parties' right to reimbursement under them. Quillen filed an answer and cross-complaint. The Circuit Court of Sullivan County heard the case on a motion for summary judgment and held: (1) that the two Private Acts amending the city charter were valid and constitutional, and (2) that this case did not fall within one of the exceptions whereby indemnification of city officials is barred because of "willful wrongdoing."

The only question presented by this appeal, then, is whether the conduct of the city officials amounted to a "willful wrongdoing" such that the city is barred from reimbursing the officials for damages arising therefrom.

The actual events which led to Horace Curry's civil rights suit (42 U.S.C. §§ 1981, 1983, 1985) against the original defendants are set forth in the memorandum opinion of the United States District Court, which is included in the record. Curry was certified by the City of Kingsport to own and operate two ambulances. During the period of time in question, however, the city had determined that the size of the municipality's population necessitated six ambulances for adequate service. For this reason, the city certified the Metro Ambulance Service on February 13, 1969, which was owned by Wright S. Johnson. Soon after its certification, Metro lost the lease to its premises and applied to the city for help in finding temporary quarters for its operation. The Board of Mayor and Aldermen voted to permit Metro to run its

ambulances out of a municipal fire hall, and a notice was printed in the newspaper announcing the temporary location of the Metro Ambulance Service. Shortly thereafter, Metro began to experience financial difficulties and requested the city to grant it a monthly subsidy of $400.00. The Mayor and Aldermen granted the subsidy, which eventually totalled $1,500.00 for a nearly four month period, and which was primarily for the purpose of compensating Metro for the unpaid fees of indigents. In return, Metro agreed to open its books for city audit to determine whether the funds were being used for the intended purpose.

When Curry learned of the subsidies, he requested similar compensation for his unpaid fees from indigents, but his request was denied; the city manager told him that he was unqualified. He then presented the city a bill for $2,837.00 for "unpaid ambulance bills," but this bill was not paid upon the advice of the city attorney. Curry then brought suit under 42 U.S.C., Sections 1981, 1983, 1985. There is no dispute that Curry's ambulance service was competent, and that his receipts dropped drastically during the time Metro was being subsidized. On February 17, 1970, the Mayor and Aldermen authorized the City of Kingsport to provide emergency ambulance service as a governmental function.

The appellant, Wayne Quillen, contends solely that, since punitive damages were awarded by the District Court, the conduct of the city officials must have been "willful wrongdoing." The brief cites two United States District Court opinions tending to hold that federal courts will allow punitive damages only for conduct arising to the level of "willful wrongdoing." However, Mr. Justice Brennan, in a separate opinion in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 2d 142 [1970], noted that conduct less than "willful" can result in the award of punitive damages:

"To recover punitive damages, I believe a plaintiff must show more than a bare violation of (42 U.S.C.) § 1983. On the other hand, he need not show that the defendant specifically intended to deprive him of a recognized federal right, as is required by the word 'willfully' in 18 U.S.C. § 242. . . . Nor need he show actual damages. . . . It is sufficient for the plaintiff to show either that the defendant acted . . . with actual knowledge that he was violating a (federal civil) right . . . *or* that the defendant acted with reckless disregard of whether he was thus violating such a right."

Moreover, in construing the two Private Acts upon which Quillen relies, we observe that the legislature excepted from indemnification either "punitive damages" *or* "damages arising from any willful wrongdoing," thus making them two distinct and specific exceptions to the right of indemnification. We consider the General Assembly, had it agreed with the appellee's contention that "punitive damages" and "damages arising from any willful wrongdoing" were synonymous, would not have given these terms the distinction which is apparent from the language of the Acts.

We also note that the punitive damages, which totalled $250.00, were small in amount compared with the compensatory damages, which amounted to $10,668.50, including the allowance for attorney's fee. Apportioned among the six defendants in that lawsuit, each defendant had to pay about $42.00 in punitive damages. In assessing the measure of punitive damages, the trier of facts must take into consideration, among other things, the degree of conduct involved.

" 'In assessing (punitive) damages, the jury should take into consideration the attendant circumstances. So, particular matters which are to be considered are the nature of the case at bar, the nature

or character of the act, the malice or wantonness of the act, the motive for the act, the manner in which it was committed, the injury intended or likely to result from a disregard or duty, the character and extent of the injury, . . . In short, as a general rule, material matters to be considered in determining the amount are what will be a proper punishment for the offending person, and the deterrent effect of the award on others.'" Suzore v. Rutherford, 35 Tenn. App. 678, 251 S.W.2d 129 [1952], certiorari denied June 7, 1952.

We believe it doubtful that the District Court, in an effort to punish or deter, would have awarded such a small amount of punitive damages for conduct which rose to the level of "willful wrongdoing". Our construction of "willfulness" requires the inclusion of the elements of intention, deliberate, purposeful conduct, to the inclusion of accident, negligence, and even error of judgment. E. g., Hoodenpyle v. Patterson, 197 Tenn. 621, 277 S.W.2d 351 [1955]. In our opinion, the record in this cause does not reveal a degree of "willfulness" that would bar indemnification of city officials who were performing their official duties. No such finding has been made in the opinions of other courts in the record of this cause. The District Court found that the defendant officials lacked that measure of good faith that would have enabled them to assert the defense of qualified governmental immunity under the theory of Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed. 2d 288 [1967]. But a finding of bad faith for purposes of testing a defense under the Pierson v. Ray doctrine is not *per se* a finding of "willful wrongdoing" for purposes of determining an exception under the Private Acts in this case.

Finally, this Court is bound to construe statutes in a manner that would give effect to the General Assembly's intent and policy considerations. E. g., Woodroof v. City of Nashville, 183 Tenn. 483, 192 S. W.2d 1013 [1946]. In order not to defeat the purpose of the legislation, the Court must strictly construe exceptions to that purpose, and give effect and meaning to every word in the body of the statute. Anderson Fish & Oyster Co. v. Olds, 197 Tenn. 604, 277 S.W.2d 344 [1955]. The language of the Private Acts is identical to that found in Section 6–640, T.C.A., the general terms of which have been found to have a strong public purpose. City of Chattanooga v. Harris, 223 Tenn. 51, 442 S.W.2d 602 [1969].

We affirm the judgment of the trial court.

DYER, C. J., CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.