CITY OF MASON, Tennessee, Petitioner,

v.

Albert Gene BANKS, Respondent.

Supreme Court of Tennessee.

March 12, 1979.

Rehearing Denied June 4, 1979.

James S. Wilder, III, Wilder, Wilder & Johnson, Somerville, for petitioner.

Marshall Gerber, Memphis, for respondent.

## OPINION

FONES, Justice.

In a previous opinion, *Banks v. City of Mason*, 541 S.W.2d 143 (Tenn.1976), we held that T.C.A. § 6–640, which requires a municipal corporation to indemnify any employee of a police department against whom judgment is recovered for conduct, other than "wilful wrongdoing," committed within the scope of his employment, was available to a judgment creditor of the employee by direct suit. Reversing the dismissal of the cause by the trial court, we remanded for a trial on the merits, allowing defendant, City of Mason, an opportunity to litigate its nonliability on the basis of the statutory defense of "willful wrongdoing" by its employee.

The case was heard by the trial judge, sitting without a jury, and the court ruled that respondent had not carried his burden of proof to show that the deputy, against whom respondent had obtained an unsatisfied judgment in federal court, was not engaged in willful wrongdoing when he inflicted injury on respondent. The intermediate court reversed, holding that the City of Mason had the burden of proof to show that its employee's acts were willful but that the proof preponderated in favor of a finding of negligence. We granted certiorari to address the areas of disagreement between the two courts.

On April 2, 1973, respondent obtained a $40,000 judgment against Arnell Freeman, a part-time deputy on the Mason police force, in an action brought in federal district court in Memphis arising under 42 U.S.C. § 1983. Although the jurisdictional prerequisites for a § 1983 action apparently were met, the underlying nature of Freeman's liability to respondent, the focus of the inquiry here, as determined in that action has not been included in the record presented to this Court.

The entire evidence upon which respondent seeks to establish that Arnell Freeman engaged in conduct within the course of his employment which entitles respondent to indemnification is the trial transcript of the proceedings in the § 1983 action. Thus, by stipulation, the parties chose to forego a trial of the indemnification issues and incorporated the proceedings that resulted in a judgment under the federal civil rights laws.

Undisputed testimony attested that respondent had been visiting his family in Mason, had been drinking beer at local bars on the evening of November 26, 1970, and became embroiled in a scuffle in front of Boyland's Cafe. Though steadfastly denied by respondent, there was some testimony that respondent's actions inside the cafe, "cutting-up" and "pouring beer on people", precipitated the incident. Officer Arnell Freeman almost immediately arrived at the scene and, as he testified, placed respon-

dent, Jerry Bond and Lawrence Hays under arrest and ordered the participants in the disturbance into his car. By this time a crowd had gathered and, at some point, Freeman summoned his partner, officer T. J. Henning.

The primary factual issue material to respondent's entitlement to relief under T.C.A. § 6–640 is whether Freeman engaged in willful wrongdoing when he arrested respondent, or whether he was justified, although negligent, in using force that ultimately blinded respondent in his left eye. According to Freeman's testimony, Hays and Bond peacefully went to the car, but respondent, "Fought me all the way over there to the car . . . It was a scuffle and tussle all the way from the time I got there and until the time I got him in the car." Though Freeman finally placed respondent in his car, according to Freeman's testimony, respondent repeatedly attempted to escape, threatening, "You are going to make me kick your ass," and trying to get at the other arrestees. Freeman hit respondent in the head with a blackjack ("slapstick"), the only weapon he carried other than a can of mace. According to Freeman's testimony, at the time he used his blackjack,

> "Well, he [respondent] was coming to me, well, actually, what I mean by coming to me, was just scuffling and I had hold of him with one hand and I was trying to tell him to get back into the car. He said: 'I'm not going nowhere. You are going to make me kick you so and so.' So I shoved him back and he turned back like this and I just hit him (indicating). He thrust his hand back."

Respondent's testimony, and that of his two uncles who witnessed the incident, advanced a radically different version of the arrest. Respondent contended that Freeman "came up and . . . yanked me by the back of my collar and he picked me up and he hit me in the back" and that at no point had he resisted arrest. Respondent testified the blackjack blow was unprovoked.

A neutral bystander, David Cartwright, provided testimony, however, that tended to substantiate Freeman's version of the arrest. Cartwright stated respondent had been resisting arrest, and in describing the circumstances under which the blow was struck, said,

> "Now, he was jumping back and up and he started having words and started having words with Dip [Freeman], and he did that, Dip hit him then.

> . . . . .

> And he was crawling out of the car when this blow, he was out of the car now, he was standing, he, he had his arm over the door."

Lawrence Hays, one of those also arrested, testified that respondent had been resisting arrest, but Hays had not witnessed the blow struck with the blackjack. He did testify, nevertheless, that Freeman did not use excessive force in placing respondent into his car, thus lending credibility to Freeman's version of the arrest.

Based upon this evidence, the trial court ruled respondent had not carried his burden of proof to establish the conduct of Freeman was not willful wrongdoing. On appeal to the intermediate court, it was held that defendant City had the burden of proof on the issue, yet the evidence supported a judgment for respondent. The Court reasoned that defendant had the affirmative on the issue, and hence the risk of nonpersuasion, because the § 1983 judgment rendered the "issues of negligence and the burden of proving negligence . . moot."

■ We find the Court of Appeals erred in holding defendant had the affirmative of the issue. In *City of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn.1975), this Court, *inter alia*, held:

> "[T]he intent of § 6–640 T.C.A. [was] that the governmental entity indemnify the employees enumerated therein by paying [and defending] any judgment for compensatory damages awarded against them *for any negligence* committed in the performance of their official duties."

(Emphasis supplied) 528 S.W.2d at 205–06.

Albeit the statute does not mention the word "negligence," it is clear from our construction of the statute in *Roberts* that T.C.A. § 6–640 contemplated indemnification for a policeman's or fireman's breach of a duty owed to an indemnitee arising out of his employment, except for conduct involving willful wrongdoing. The burden of proof, in the sense of the risk of nonpersuasion, should rest on the party who seeks to establish his entitlement to the benefits of the legislative enactment. *Cf. Pack v. Royal-Globe Ins. Cos.*, 224 Tenn. 452, 457 S.W.2d 19, 25 (1970); *Chisholm v. Billings*, 220 Ga. 870, 142 S.E.2d 781 (1965); *see* 71 C.J.S. *Pleading* § 86 at 205 (1951).

■ One of the statutory requirements for recovery is the absence of willful wrongdoing. If willful wrongdoing is made an issue by the pleadings, its nonexistence must be established or plaintiff cannot recover. The confusion arises because, generally, the plaintiff must prove the affirmative of an issue, and here, the statute requires the negative to support the cause of action.

In 1 Gibson's Suits in Chancery § 451 at 512 (5th ed. 1955) the author states:

"This burden rests on that party against whom, on the state of the pleadings, the issue would be decided if no proof in regard to it was introduced."

■ The burden of proving an affirmative of an issue "may sometime carry with it a responsibility of proving the negative of a fact or proposition, like the burden of the plaintiff in negligence cases in some states to prove freedom from contributory negligence." 1 Jones, Evidence §§ 5.5 at 533 and 5.8 (6th ed. Gard 1972); *see Maury Nat'l Bank v. McAdams*, 106 Tenn. 404, 408, 61 S.W. 773, 774 (1901). We hold, therefore, respondent had the burden to prove that the employee had not engaged in "willful wrongdoing." *Accord, Shaw v. Industrial Safety Supply Co.*, 23 Conn.Sup. 149, 178 A.2d 284 (1962); *see* Annot. 71 A.L.R.3d 90 § 14 (1976).

■ The Court of Appeals held that the judgment in federal court, which it characterized as a "judgment for injuries resulting from a tort committed upon the plaintiff," rendered "[t]he issues of negligence and the burden of proving negligence . . . moot." We find that such a conclusion must be based on a misapplication of the doctrine of collateral estoppel. At the outset, as will be more fully developed *infra*, respondent's former adjudication was not a tort judgment, but rather a judgment based on the federal civil rights laws. Respondent has included neither the actual judgment nor the pleadings in that cause in the record, but he relies entirely on the trial transcript. It has not been shown that the issue decided in the § 1983 action was identical to the one presented in the case at bar, i. e., whether Freeman's conduct was "willful wrongdoing." It is elementary that estoppel by judgment only applies to those issues actually litigated. *E. g., Shelley v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709 (1966); *A. L. Kornman Co. v. Metropolitan Government of Nashville and Davidson Co.*, 216 Tenn. 205, 391 S.W.2d 633 (1965); *accord, Duverney v. State*, 96 Misc.2d 898, 410 N.Y. S.2d 237 (N.Y.Ct.Cl.1978) (§ 1983 judgment in federal court not binding in state court action against State arising out of conduct of police officers in arresting plaintiff). It has not been shown that the issue of whether Freeman's conduct was willful wrongdoing was actually, or necessarily, adjudicated in the § 1983 suit.

■ Since we hold respondent had the burden of proof, as properly determined by the trial court, it is necessary to determine whether, under the facts adduced in the federal trial transcript, respondent met his burden of proof to establish that Freeman's conduct was not "willful wrongdoing." Under T.C.A. § 27–303, the cause comes before this Court for review *de novo*, with a presumption of correctness of the judgment of the trial court, law or equity, when the Court of Appeals does not concur in that judgment. *See City of Columbia v. C. F. W. Constr. Co.*, 557 S.W.2d 734 (Tenn.1977). It is incumbent upon the respondent to

show that the evidence preponderates otherwise.

The trial court ruled that the evidence made out a case of excessive use of force by Freeman in effecting the arrest of respondent. The court's order recited that "any injuries inflicted upon the plaintiff were done through willful or intentional acts on the part of Arnell Freeman and, therefore, that the cause of action against the City of Mason should be dismissed." In contrast, the intermediate court concluded as to this issue:

"The total evidence establishes to the satisfaction of this Court that the policeman was attempting to place a resisting person, lawfully arrested for fighting on the public streets of the city, in the officer's automobile. The force used may have been excessive under the circumstances. The blow to the head may have been a negligent act on the part of the officer, the use of that force in that degree may have been bad judgment, but the evidence does not establish willful wrongdoing on the part of the officer."

 We think that the intermediate court's version of the incident, also urged by respondent, does not find support in the law or under the facts of the case. T.C.A. § 40–808 provides, "If, after notice of the intention to arrest the defendant, he either flee[s] or forcibly resists, the officer may use all the necessary means to effect the arrest." The basic principle, as codified in the statute, is that an officer may only use the force reasonably necessary to accomplish the arrest, with due regard to other attendant circumstances, such as his own safety or that of others present. *See* Annot.: *Peace Officer's Liability For Death Or Personal Injuries Caused By Intentional Force In Arresting Misdemeanant,* 83 A.L. R.3d 238 (1978). It is familiar law that a policeman has less privilege to use force in apprehending an alleged misdemeanant than an alleged felon. We think it is well settled in Tennessee, as expressed by this Court in *Human v. Goodman,* 159 Tenn. 241, 18 S.W.2d 381 (1929), that:

"Except in self-defense, an officer cannot resort to the extremity of killing, or shedding blood, in arresting or in preventing the escape of one charged with an offense less than felony, even though the offender cannot be taken otherwise." 159 Tenn. at 243–44, 18 S.W.2d at 381. *Accord, Day v. Walton,* 199 Tenn. 10, 281 S.W.2d 685 (1955); *Johnson v. State,* 173 Tenn. 134, 114 S.W.2d 819 (1938); *Reneau v. State,* 70 Tenn. 720 (1879); *State v. Dunn,* 39 Tenn.App. 190, 282 S.W.2d 203 (1955); *Garner v. State,* 37 Tenn.App. 510, 266 S.W.2d 358 (1953); *see* Model Penal Code § 3.07, Comments (Tent.Draft No. 8, 1958); Annot. 42 A.L.R. 1200 (1926); Annot. 3 A.L.R. 1170 (1919). There is no consensus in the case law as to whether the use of a blackjack, or similar club-like weapon, amounts to excessive force as a matter of law when used to effect a misdemeanor arrest. Most jurisdictions construe the issue of whether a policeman's use of force is excessive to be a jury question. Although he attacks the trial judge's ruling, respondent has not presented any evidence to suggest that Freeman's conduct was in response to like force on the part of his arrestee; actually, Freeman's uncontradicted testimony was that he was "trying to keep [respondent] under control." Respondent has not presented any evidence to suggest that Freeman was reasonably in danger of his life or great bodily harm when he used such force by means of a weapon as to maim his arrestee for the rest of his life. In fact, respondent and his two uncles' testimony, constituting plaintiff's entire proof, presents the proposition that Freeman's conduct in clubbing respondent was an unjustified, unprovoked and brutal act. We think that when an arrestee is resisting arrest for a mere misdemeanor, a policeman is not privileged to use a weapon in such a way as to create a high degree of probability of serious injury to the arrestee, when other avenues are available to effect the arrest while maintaining his own personal safety and that of others present. We recognize the general rule that a presumption of good faith attaches to an officer's use of force in effecting an arrest and that he is

not liable for damages unless the means he uses are "clearly excessive." *See* Restatement (Second) of Torts § 132, Comment a (1965). Under the facts of this case, however, we find that the respondent has not shown the evidence preponderates against the decision of the trial court that Freeman used excessive force in effecting the arrest.

 A finding that Freeman did not have reasonable grounds to effect the arrest by the force employed does not mean that Freeman was negligent, as the intermediate court held. It is clear from the record that Freeman intended to hit respondent in the head with his blackjack; it was his voluntary and conscious act. He was privileged to use only that force necessary to effect the arrest and was liable for the amount of the force that was excessive. *See* Restatement (Second) of Torts §§ 71, 133. Hence Freeman was liable for the damages caused by his excessive and unprivileged use of force under the intentional tort of battery. It is irrelevant that Freeman did not "intend" to maim respondent, for his use of that force, in an exercise of a conscious and volitional act, was an unprivileged intentional tort. *See* Restatement (Second) of Torts § 8A.

No authority has been cited before this Court that, under the circumstances of this case, Freeman's acts could be considered negligent. In *Baranowski v. City of Milwaukee*, 70 Wis.2d 684, 235 N.W.2d 279, 282 (1975), the court considered a similar complaint but concluded, "In this case the allegations couched in negligence go only to whether the police officers had a privilege and whether they exceeded the reasonable use of the privilege."

This conclusion is supported not only from a reading of the record, but by the fact, as conceded by all parties, that respondent has recovered judgment under a § 1983 cause of action. Respondent claims that the proof shows a "negligent act" and that the judgment in federal court, based upon the proof before us, rested upon a finding of negligence. Our analysis of the relevant case law persuades us that respondent's contention is wholly incongruous

with a § 1983 judgment based on the very proof before the Court.

The essential requirements of a § 1983 action are that the conduct complained of was engaged in under color of state law and that such conduct deprived plaintiff of rights, privileges or immunities secured by the federal constitution and laws. *E. g., Jones v. Hopper*, 410 F.2d 1323, 1326 (10th Cir. 1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970). In *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961), the United States Supreme Court held that a plaintiff bringing a claim under § 1983 need not establish defendant's specific intent to deprive the plaintiff of a constitutional right and indicated that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." The Supreme Court has referred to the § 1983 action as a "species of tort liability." *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 136 (1976). More recently, however, the Court has said, speaking through Mr. Justice Marshall, "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978). It is clear, therefore, that whatever the nature of the conduct complained of, it must amount to a deprivation of a federal right under the color of state law. *See Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied, Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

The Supreme Court of the United States has not addressed specifically whether an isolated act of negligence *simpliciter* can support a finding that the negligent act caused a § 1983 deprivation, though the Circuit Courts of Appeals are in disagreement. *Cf., e. g., Navarette v. Enomoto*, 536 F.2d 277 (9th Cir. 1976), *rev'd on other grounds, sub nom., Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24

(1978) *with Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). But in *Puckett v. Cox*, 456 F.2d 233, 235 (6th Cir. 1972), the Sixth Circuit Court of Appeals, following the majority rule, held that an isolated incident of ordinary negligence would not amount to a deprivation of federal rights cognizable under § 1983. In reaching a similar result, the federal panel in *Bonner v. Coughlin, supra*, found support under *Paul v. Davis*, 424 U.S. 693, 699, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405, 412 (1976), in which the Supreme Court refused to allow § 1983 to "make actionable many wrongs inflicted by governmental employees which had heretofore been thought to give rise only to state law tort claims." [1]

Assuming, *arguendo*, that Freeman's actions were negligent, as argued now by respondent, we fail to see how such conduct would support a § 1983 judgment that respondent was denied a federally protected right when the Sixth Circuit, whose construction of the applicable law would be binding on the federal court sitting in Memphis, has held that isolated incidents of negligence are not cognizable under § 1983. On the other hand, numerous decisions have allowed recovery under § 1983 based on a policeman's use of excessive force in effecting an arrest when the policeman's conduct was conscious, volitional and purposeful. *See, e. g., Bellows v. Dainack*, 555 F.2d 1105 (2d Cir. 1977); *McArthur v. Pennington*, 253 F.Supp. 420 (E.D.Tenn.1963); *Arroyo v. Walsh*, 317 F.Supp. 869, 870 (D.Conn.1970). *But see Smith v. Jones*, 379 F.Supp. 201, 205 (M.D.Tenn.1973), *aff'd*, 497 F.2d 924 (6th Cir. 1974), holding that, under Tennessee law, defendant policeman had reasonable grounds to believe the degree of force used was necessary for the apprehension of the deceased, a felon.

It is obvious that these decisions were based on the willful, but unprivileged, acts of a policeman in effecting an arrest in a manner that amounted to a misuse of his power under the color of law. *See Robertson v. Wegmann, supra*. Consequently, it is clear from the law and the evidence in the record, that Freeman's conduct was an intentional and willful act, as found by the trial court. It follows that such a volitional, unprivileged and abusive act falls within the definition of "willful wrongdoing" under T.C.A. § 6–640. An evaluation of the proof and an analysis of the applicable law lead inevitably to this result.

Respondent relies on *City of Kingsport v. Quillen*, 512 S.W.2d 569 (Tenn.1974). In that case we said that "willfulness" requires the inclusion of the elements of intentional, deliberate and purposeful conduct, to the exclusion of accident, negligence and even errors of judgment. *Id.* at 573. We are satisfied that Freeman's conduct was willful, tested by that definition. The last paragraph of the *Quillen* opinion, observing that exceptions to the legislative purpose must be strictly construed, was dicta. As a general proposition, the principle stated is correct, but we do not think that it can be used to alter or change the meaning of "willful wrongdoing."

The judgment of the Court of Appeals is reversed and the suit is dismissed. Costs are adjudged against respondent, Banks.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

The Petition to Rehear relies upon factual contentions and legal authorities hereto-

---

1. In *Procunier v. Navarette, supra, rev'g, Navarette v. Enomoto supra*, the Supreme Court held that state prison officials were entitled to a qualified immunity from damages under § 1983 and could not be held liable under allegations of negligent interference with a state prisoner's outgoing mail in violation of his constitutional rights under the first and fourteenth amendments. Writing in dissent, Chief Justice Burger would have held that "one who does not intend to cause and does not exhibit deliberate indifference to the risk of causing the harm that gives rise to a constitutional claim is not liable for damages under § 1983" and observed, "Neither the language nor the legislative history of § 1983 indicates that Congress intended to provide remedies for negligent acts." 434 U.S. at 568, 98 S.Ct. at 863.

fore considered by the Court, and therefore does not comply with the requirements of Rule 32. *See Louisville & Nashville R. R. Co. v. United States F. G.*, 125 Tenn. 658, 148 S.W. 671 (1911). Nevertheless, this is an unusual and difficult case, and we have thoroughly considered the arguments advanced in the petition, but have reached the same conclusion heretofore announced.

The Petition to Rehear is denied.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.