IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2017 Session

## SHIRA JEAN STAFFORD, ET AL. v. JACKSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Jackson County**
**No. 11-CV-27       Clara W. Byrd, Judge**

_____

**No. M2016-01883-COA-R3-CV**

_____

An arrestee sued the arresting sheriff's deputy, the sheriff, and the county for assault and battery and intentional infliction of emotional distress. The trial court dismissed the case on summary judgment. We affirm as to the claim for intentional infliction of emotional distress but find that there are genuine issues of material fact precluding summary judgment on the claim for assault and battery.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Richard Marshall Brooks, Carthage, Tennessee, for the appellants, Shira Jean Stafford and Donnie Stafford.

Robyn Beale Williams, Nashville, Tennessee, for the appellees, Chris Carter, Jackson County Sheriff, Jackson County, Tennessee, and Brad Stafford.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of November 16, 2010, Deputy Chris Carter of the Sheriff's Department of Jackson County, Tennessee pulled over a car driven by Donnie Stafford for speeding on Jennings Creek Highway at Whitleyville. After hearing of the traffic stop over a police scanner, Shira Stafford, Mr. Stafford's wife, and their son, Jacob, drove

to the scene in a van and parked behind Deputy Carter's police car.[1]  Mrs. Stafford got out of the van, questioned Deputy Carter about why her husband had been stopped, and attempted to go check on Mr. Stafford.  When Mrs. Stafford refused his instructions to return to the van and continued to interfere, Deputy Carter arrested her and placed her in handcuffs.

On November 15, 2011, Mr. and Mrs. Stafford ("the plaintiffs") filed suit against Jackson County, Sheriff Brad Stafford, and Deputy Carter ("the defendants") for numerous causes of action.  The plaintiffs sued the defendants in their official capacity for negligence; negligent hiring, training, supervision and discipline; and false arrest and imprisonment.  They sued the defendants as individuals for negligence, excessive force, assault and battery, false arrest and imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, malicious prosecution, and loss of consortium.

The civil proceedings were stayed in April 2012 until criminal charges against Mrs. Stafford were resolved.  Mrs. Stafford was then convicted of preventing or obstructing a law enforcement officer from effecting a stop, frisk, halt, or arrest in violation of Tenn. Code Ann. § 39-16-602, and her conviction was upheld by the Court of Criminal Appeals.  *State v. Stafford*, No. M2013-01319-CCA-R3-CD, 2014 WL 2902278 (Tenn. Crim. App. June 26, 2014).  The parties filed a joint motion to lift the stay in December 2014.

The defendants answered, and the parties engaged in discovery.  On March 14, 2016, the defendants filed a motion for summary judgment supported by excerpts from the criminal trial transcript and excerpts from the depositions of Mr. Stafford, Mrs. Stafford, Jacob Stafford, Sheriff Brad Stafford, and Deputy Carter.  The plaintiffs opposed the motion and submitted deposition excerpts from Mr. and Mrs. Stafford and an excerpt from the criminal trial transcript.

The plaintiffs' response to the defendants' statement of facts in support of their motion for summary judgment shows the following pertinent factual disputes and points of agreement:

11.  As soon as the van stopped, Mrs. Stafford exited and walked in front of the van and approached Deputy Carter's door.
RESPONSE:  Admitted.
12.  Carter then exited his vehicle and instructed Mrs. Stafford numerous times to return to her car but she repeatedly refused to do so.

---

[1] Apparently, there are many people named "Stafford" in Jackson County. At oral argument, counsel for the appellants maintained that his clients were a part of the "good Staffords" of Jackson County, not the "bad Staffords."

- 2 -

RESPONSE: It is denied that Mrs. Stafford refused to get back in her car. In fact, she tried to go.

13. Instead, she kept trying to push her way around Deputy Carter to try and get to Mr. Stafford's vehicle.

RESPONSE: It is denied that Mrs. Stafford kept trying to push her way around Defendant Carter. In fact, Mrs. Stafford tried to get back in her car.

14. During this exchange, Mr. Stafford got out of his vehicle and Jacob began exiting his vehicle.

RESPONSE: Admitted.

15. Deputy Carter then had three people in different locations all outside of their vehicles which posed a safety issue.

RESPONSE: It is denied that this caused a safety issue.

16. Carter then instructed the Stafford men to return to the vehicles and called for back-up.

RESPONSE: It is disputed that Defendant Carter then instructed the Stafford men back to their vehicles. Testimony will show that Defendant Carter then handcuffed the plaintiff.

17. The men returned to their vehicles and Mrs. Stafford walked back toward the rear of the patrol car at which time Carter asked her for identification and she questioned why he needed her identification to which she replied she would not.

RESPONSE: It is disputed that Mrs. Stafford told Defendant Carter that she "would not" show her identification.

18. At that point, Carter makes the decision to arrest her for obstructing his traffic stop of Mr. Stafford and failing to comply with instructions and informs her that she is under arrest.

RESPONSE: This is admitted for the purposes of summary judgment as contemplated by Rule 56 of the T.R.Civ.P., but the Plaintiff disputes that this is a "material fact" . . . .

19. Mrs. Stafford attempted to return to her vehicle to get her identification, and Deputy Carter took her by the right forearm and placed a handcuff on her arm.

RESPONSE: Admitted.

20. Mrs. Stafford attempted to pull away and Deputy Carter instructed her to stop and finished cuffing her.

RESPONSE: It is denied that Mrs. Stafford attempted to pull away from Defendant Carter. Defendant Carter, "grabbed [her] right arm and twisted it around [her] back, put a cuff on it, and pushed [her] over the fender over the van and told [her] [she] was under arrest for disorderly conduct. And [Carter] got the other arm and pulled around and cuffed [her]." [Quoting from Mrs. Stafford's deposition].

21. Carter then placed Mrs. Stafford in the back seat of his patrol car.

RESPONSE: Admitted.

. . . .

24. Wade Draper and David Morgan then transported Mrs. Stafford to the jail for booking.

RESPONSE: This is admitted for purposes of summary judgment as contemplated by Rule 56 of the Tenn.R.Civ.P., but the Plaintiff disputes that this is a "material fact" . . . .

25. Mrs. Stafford never told Deputies Carter, Morgan or Draper that the handcuffs were hurting her, nor did she tell him about any of her health conditions.

RESPONSE: It is admitted that Mrs. Stafford did not tell Carter, Morgan or Draper that the handcuffs were hurting her, but she immediately told the officers during her intake into the jail that she was in pain.

. . . .

29. Mrs. Stafford was released from Jail at approximately 7:30 p.m.

RESPONSE: This is admitted for purposes of summary judgment as contemplated by Rule 56 of the Tenn.R.Civ.P., but the Plaintiff disputes that this is a "material fact" . . . .

30. Following her release, Mrs. Stafford went home with Jacob.

RESPONSE: Admitted.

31. Once she got there, she and her daughter in law went to Cookeville Medical Center.

RESPONSE: Admitted.

32. While there she complained of pain in her wrists and right shoulder.

RESPONSE: Admitted.

33. They x-rayed her wrists, gave her some medication for her blood pressure, and released her.

RESPONSE: Admitted.

The defendants' motion for summary judgment was heard on April 14, 2016 and, on May 3, 2016, the trial court entered an order granting the motion. The court noted that "the plaintiffs have voluntarily conceded the claims of negligent hiring, negligent training, negligent supervision, false arrest, false imprisonment, malicious prosecution, and negligent infliction of emotional distress." As to the remaining claims, the court made the following conclusions:

3. That with regard to a claim for assault and battery, cases have held that handcuffing alone can amount to excessive force. Therefore, in this case, there is a question of fact as to whether or not the force used by Deputy Carter was excessive.

4. That in order to establish a claim for assault and battery, the plaintiff must present sufficient evidence of damages. In this case, there is not a scintilla of evidence in the records concerning the medical condition of Mrs. Stafford. The only evidence in the record before this Court is that her

wrist and right shoulder hurt. Mrs. Stafford went to the emergency room. They gave her blood pressure medicine and released her. This is insufficient to establish that Mrs. Stafford sustained an injury as a result of the arrest. Therefore, the plaintiffs have failed to establish the element of damages in this case, and summary judgment is appropriate on the claims of assault and battery.

5. That with regard to the claim for intentional infliction of emotional distress, the plaintiff has failed to establish essential elements of a claim pursuant to *Bains v. Wells*, 936 S.W.2d 618 (Tenn. 1997).

6. That the court record is devoid of any evidence establishing a serious mental injury. Additionally, that even in the light most favorable to the plaintiff[s], the facts are insufficient in this case to establish conduct on the part of Deputy Carter that is so outrageous that it is not tolerated by civilized society. Therefore, the plaintiffs' claim of intentional infliction of emotional distress must also fail, and summary judgment is therefore, appropriate.

The trial court further determined that, in light of its findings of fact and conclusions of law, "the defendants are also entitled to summary judgment on all remaining claims in this matter."[2] The court granted summary judgment in favor of the defendants and dismissed with prejudice all claims against the defendants.[3]

The plaintiffs appeal two issues from the trial court's grant of the defendants' motion for summary judgment. The plaintiffs argue that the trial court erred in granting summary judgment on their claims for assault and battery and intentional infliction of emotional distress.

STANDARD OF REVIEW

A party filing a motion for summary judgment should prevail "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it "(1) [s]ubmits affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) [d]emonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101. We review the trial court's judgment granting the

---

[2] The only remaining claims were excessive force and loss of consortium.

[3] The trial court did not address any defenses that might have been available under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated Sections 29-20-101 *et seq*.

defendants' motion for summary judgment de novo, according it no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

ANALYSIS

I.    Assault and Battery

A. Excessive force.

Under Tennessee law, a police officer can be liable for "damages caused by his excessive and unprivileged use of force under the intentional tort of battery." *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979). In making an arrest, a police officer is "privileged to use only that force necessary to effect the arrest," while also "maintaining his own personal safety and that of others present." *Id.* at 625-26. Tennessee courts apply the same "excessive force" analysis in assault and battery claims as federal courts in § 1983 claims for excessive force. *Harris v. Metro. Gov't of Nashville*, No. 3:06-0868, 2007 WL 4481176, at *9 (M.D. Tenn. Dec. 18, 2007). Thus, "Tennessee courts may look to federal case law on excessive force in analyzing claims of assault and battery by police officers." *Murray ex rel. Morrow v. Metro. Gov't of Nashville*, No. 3:06-0570, 2007 WL 1521004, at *9 (M.D. Tenn. May 21, 2007)).

In its order, the trial court determined that, because "handcuffing alone can amount to excessive force," "there is a question of fact as to whether or not the force used by Deputy Carter was excessive." The defendants argue that the trial court erred in reaching this conclusion. The plaintiffs assert that the force used by Deputy Carter in pulling on the center of the handcuffs *after* handcuffing Mrs. Stafford was "clearly excessive."[4]

The plaintiffs rely upon the following testimony from Mrs. Stafford's criminal trial:

A. That's when [Deputy Carter] grabbed me, jerks my arm behind me, puts me over the fender of the van, puts the handcuffs on this one, pulls it up and tells me I am under arrest for disorderly conduct, and he handcuffs the other one, and I did not resist him because I didn't know I was going to get arrested.
Q. Now, you were referring, when you was telling about handcuffs, when you were moving your arm, which arm is that, the right arm?

---

[4] Although the plaintiffs alleged in the complaint that Deputy Carter used excessive force *while* handcuffing Mrs. Stafford, their position as fleshed out at the summary judgment stage is that he used excessive force immediately *after* handcuffing her.

A. Yes, this one (indicating).
Q. He cuffed it first?
A. Yes.
Q. And then what did he do?
A. He cuffed it, pulled it up back behind my back and then he reached and grabbed this one (indicating). He pushed me down and grabbed it and cuffed it and then pulled me up by the chain, by the middle of the cuff, the chain.
Q. So he first cuffed the right—
A. Yes.
Q. –and then he pulled that up behind your back—
A. Yes.
Q. –and then he grabs the other arm, does the same with it—
A. Yes.
Q. –back up behind your back?
A. Yes.
Q. And did he lift up on it then?
A. Up on the middle of the chain part.
Q. So was that painful?
A. Yes.
Q. And what did you do?
A. Scream. It hurt.

The defendants rely upon case law regarding instances where the excessive force claim is based upon handcuffing alone. *See Vance v. Wade*, 546 F.3d 774, 782 (6th Cir. 2008) (stating that a claim of excessive force based upon handcuffing alone was proper only where the officer (1) handcuffed the plaintiff unnecessarily tightly, and (2) ignored the plaintiff's pleas to be released from the tight handcuffs). As stated above, however, the plaintiffs' argument is based on Deputy Carter's actions after Mrs. Stafford was already handcuffed. According to Mrs. Stafford's allegations, Deputy Carter held onto the middle of the handcuffs and pulled upward, causing pain in her shoulders.[5] Thus, the cases cited by the defendants are not applicable.

In light of the testimony submitted from Mrs. Stafford's criminal trial, we agree with the trial court's conclusion that there is a question of fact regarding whether Deputy Carter used excessive force after handcuffing Mrs. Stafford. *See Vance*, 546 F.3d at 783-84 (agreeing with magistrate's finding that "pulling up on [Vance's] handcuffs while his hands were cuffed behind his back," along with other actions, "could constitute an excessive use of force").

---

[5] According to her counsel, Mrs. Stafford is not a small person.

B. Damage/Injury.

In its decision, the trial court determined that the plaintiffs "failed to establish the element of damages in this case" and that summary judgment was, therefore, "appropriate on the claims of assault and battery." The plaintiffs assert that the trial court erred in granting summary judgment on the assault and battery claim because, by her testimony, Mrs. Stafford established that Deputy Carter's actions caused her to experience pain. She stated that she cried out in pain when Deputy Carter pulled up on the handcuffs, that she told jail personnel that she was in pain after they took off the handcuffs, and that she went to the hospital later that evening.

This Court has defined the tort of battery as "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *4 (Tenn. Ct. App. Apr. 5, 2001) (citing *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989); RESTATEMENT (SECOND) OF TORTS § 18(1) (1965); 7 Stuart M. Speiser, et al., THE AMERICAN LAW OF TORTS § 26:12 (1990)); *see also Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995). Therefore, a battery claim requires proof that the defendant intentionally committed an act that resulted in a harmful or offensive contact with the plaintiff.

The federal case law on excessive force generally holds that a "significant physical injury" is not required to survive summary judgment. *Hollis v. Estes*, No. 1:09-0077, 2011 WL 336146, at *9 (M.D. Tenn. Jan. 31, 2011) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 402 (6th Cir. 2009)). In *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997), the court determined that there was a genuine issue of material fact as to whether the officer used excessive force. The court reached this conclusion even though the pain and numbness in the plaintiff's wrists did not continue after the handcuffs were removed. *Id.* at 1310, 1312-13.

One of the instances of excessive force before the court in *Morrison v. Board of Trustees of Green Township,* 583 F.3d at 406, involved a police officer pushing the plaintiff's face into the ground during an arrest. The officer argued that the plaintiff "sustained no real injury" because the plaintiff described her injury as a "minor scratch, not even deep enough to cause [the skin] to bleed." *Morrison*, 583 F.3d at 406. The court rejected the officer's reasoning, stating, in part, as follows:

"Gratuitous violence" inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial. *See, e.g., Pigram ex rel. Pigram v. Chaudoin*, 199 Fed. Appx. 509, 513 (6th Cir. 2006). In *Pigram*, it was alleged that the defendant police officer slapped the handcuffed plaintiff in the face because the latter

was being unruly and had a "smart-ass mouth." *Id.* at 513. Finding the defendant's conduct to be unreasonable under the Fourth Amendment for the purposes of summary judgment, *Pigram* emphasized that a "slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Id.* The Court reached this conclusion notwithstanding the relatively minimal use of force applied and the absence of any resulting injury. *See id.* (stating "under specific circumstances, a slap may constitute a sufficiently obvious constitutional violation" even if "involv[ing] less physical force than a 'tackle'").

*Id.* at 407. Applying the assumption (required at the summary judgment stage) that a reasonable officer would not have felt a threat to his safety under the circumstances, the *Morrison* court held that this type of "antagonizing" and "humiliating" conduct was "unreasonable under the Fourth Amendment, regardless of the existence of injury." *Id.*

In the present case, Mrs. Stafford testified (in the criminal trial and in deposition excerpts submitted for and against summary judgment) that, when Deputy Carter pulled up on the middle of the handcuffs, she felt pain and screamed. When the handcuffs were removed at the jail, Mrs. Stafford told the jail personnel that she was in pain; she reported pain in her shoulders. Later that evening, she went to the emergency room for pain in her wrists and her right shoulder. After the incident, Mrs. Stafford testified, she was not able to vacuum.

Viewing the evidence in the light most favorable to the plaintiffs, we conclude that the trial court erred in granting summary judgment to the defendants on the assault and battery claim on the basis that there was no evidence of injury.[6] A genuine issue of material fact exists as to damages.

## II.     Intentional Infliction of Emotional Distress

The plaintiffs also argue on appeal that Mrs. Stafford has suffered ongoing mental distress as a result of Deputy Carter's intentional act of handcuffing her and jerking up on her wrists, thereby causing a torn rotator cuff.

A claim for intentional infliction of emotional distress requires a showing that "'the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.'"

---

[6] In their appellate brief, the defendants also argue that the plaintiffs failed to establish the intent to harm necessary to prove their assault and battery claim. This argument was not asserted by the defendants at the trial level, and we therefore consider it waived. *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 825 (Tenn. Ct. App. 2012).

*Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)). Our Supreme Court noted, in *Bain v. Wells*, 936 S.W.2d 618, 622-23 (Tenn. 1997), that "no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious" but has adopted the "high threshold standard" of the Restatement (Second) of Torts:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

*Bain*, 936 S.W.2d at 623 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)). Thus, liability for the intentional infliction of emotional distress "'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Id.* at 622 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

In granting the defendants summary judgment on the plaintiffs' claim for intentional infliction of emotional distress, the trial court concluded that "the court record is devoid of any evidence establishing a serious mental injury." The court also stated that, "even in the light most favorable to the plaintiff, the facts are insufficient in this case to establish conduct on the part of Deputy Carter that is so outrageous that it is not tolerated by civilized society."

We agree with the trial court's conclusion. The allegations asserted by the plaintiffs do not rise to the level of such outrageous and extreme conduct as to go beyond all bounds of decency and to be regarded as "utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d. Accordingly, we affirm the trial court's granting of summary judgment to the defendants on the plaintiffs' claim for intentional infliction of emotional distress.

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed half to the appellants and half to the appellees. Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE