IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2009 Session

## RONALD TIMMONS v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 05C-137    Thomas Brothers, Judge**

---

**No. M2008-01581-COA-R3-CV - Filed June 15, 2009**

---

Plaintiff filed this Governmental Tort Liability Act action against the Metropolitan Government of Nashville and Davidson County for injuries sustained during his arrest for driving under the influence following a vehicular accident. Plaintiff contends the police officers who arrested him were negligent in failing to recognize that he was not intoxicated but in diabetic shock, in failing to recognize that he could be restrained and handcuffed while standing, instead of in the prone position, and that he sustained a spiral, comminuted fracture of the humerus while an officer was pulling his right arm behind his back in an effort to cuff his hands. Following a bench trial, the trial court found the officers were negligent in the manner in which they assessed the threat posed by Plaintiff and were negligent in the decision to handcuff him in the prone position, which caused his injuries. The trial court, therefore, held the Metropolitan Government liable for the officers' negligence, assessed 100% of the fault to the officers, and awarded Plaintiff $140,000 in damages. On appeal, the Metropolitan Government insists it is immune from liability because the officers' actions were not the result of negligence but, it contends, the officers' consciously and volitionally used an excessive amount of force that constituted the intentional tort of battery. Alternatively, the Government contends, if it is liable under a negligence theory, the trial court erred by apportioning no fault to Plaintiff. We have determined the evidence does not preponderate against the trial court's findings that Plaintiff's injuries resulted from the officers' negligent acts and omissions, that the Metropolitan Government is liable for the officers' negligence, that Plaintiff was not contributorily negligent, and that Plaintiff is entitled to recover damages in the amount of $140,000. Accordingly, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Sue B. Cain, Kevin C. Klein, and Andrew D. McClanahan, Nashville, Tennessee, for the appellant, The Metropolitan Government of Nashville and Davidson County.

Steve North and Mark North, Madison, Tennessee, for the appellee, Ronald Timmons.

# OPINION

This action arises from the events that occurred on the evening of March 6, 2004 after Plaintiff, Ronald Timmons, had eaten dinner at his sister's residence. After dinner, at approximately 7:00 p.m., he started driving to his home, which was approximately four miles from her house. While driving, Mr. Timmons, a Type I diabetic, began to experience the symptoms of insulin shock.[1] In an effort to regulate his blood sugar, Mr. Timmons stopped at a convenience store to buy a candy bar, which he ate, and then waited at the store fifteen minutes for the symptoms to subside. When the symptoms began to subside, Mr. Timmons resumed his drive home; however, shortly thereafter, he again experienced the symptoms of insulin shock. Believing he could drive home safely, Mr. Timmons continued his drive toward his home, but he never made it. While driving on Dickerson Pike, Mr. Timmons "blacked out" and began driving down the wrong side of the road, causing motorists to make 911 calls to inform the police. Before the police could respond, Mr. Timmons was involved in an accident; the property damage to both vehicles was minor and no one sustained injuries in the collision.

Metropolitan Police Officer Corey Wilson was the first officer to arrive at the scene. When Officer Wilson arrived, he found Mr. Timmons sitting in the driver's seat clutching the steering wheel with both hands; Mr. Timmons' frame was rigid, he was completely unresponsive to Officer Wilson's inquiries, and Mr. Timmons' eyes appeared red and watery. Based upon these observations and Mr. Timmons' non-responsiveness, Officer Wilson believed Mr. Timmons was intoxicated. Because Mr. Timmons would not respond or cooperate, Officer Wilson called for the assistance of additional officers. When the second officer, Officer Thornton, arrived at the scene, he did not realize Officer Wilson was already at the scene. As a consequence, Officer Thornton approached the vehicle and ordered Mr. Timmons to get out of the vehicle. As before, Mr. Timmons did not respond to Officer Thornton, nor comply with any of his instructions. Officer Thornton then attempted, unsuccessfully, to pull Mr. Timmons out of the vehicle. Within a few minutes, fifteen police vehicles, an ambulance, and a fire truck arrived at the scene.

In the interim, and despite Officer Thornton's repeated efforts, Mr. Timmons remained in the driver's seat, rigid, unresponsive, and vigorously clutching the steering wheel with both his hands. When Officer Jacob Pilarski arrived, he entered the vehicle on the passenger side in an attempt to push Mr. Timmons toward Officer Thornton, as Officer Thornton attempted to pull Mr. Timmons out of the vehicle on the driver's side using a technique called "soft empty hand control." As Officer Thornton pulled Mr. Timmons' hands from the steering wheel in an attempt to pull him from the vehicle, Mr. Timmons, in what the trial court found was a reflexive action, immediately pulled his hands back in the vehicle. Finally, Officer Thornton succeeded in pulling Mr. Timmons from the vehicle. At the moment Mr. Timmons was removed from the vehicle, Officer Pilarski immediately went to the driver's side of the vehicle, grabbed Mr. Timmons from Officer Thornton's

---

[1] "Insulin shock" is a medical condition where the body reacts to excessively large amounts of insulin in the bloodstream producing an abnormal fall in the person's level of blood sugar. Symptoms include nervousness, trembling, sweating, and paleness.

grasp, and with the help of an unidentified officer, placed Mr. Timmons face down on the ground in what is known as the "prone position."[2]

With Mr. Timmons face down in the prone position, Officer Pilarski straddled Mr. Timmons in order to handcuff him. Officer Pilarski pulled Mr. Timmons' left arm behind him and placed a handcuff on his wrist. As Officer Pilarski unsuccessfully attempted to place a handcuff on Mr. Timmons' right wrist, he believed Mr. Timmons was resisting arrest because Mr. Timmons' right arm was rigid underneath Mr. Timmons' body, and Mr. Timmons was not cooperating. After a few failed attempts to remove Mr. Timmons' right arm from underneath Mr. Timmons' body, Officer Pilarski requested assistance from Officer Wilson, who was 6 feet 7 inches tall and weighed 220 pounds. While other officers were assisting to secure Mr. Timmons' legs, which "flopped and flailed" about, Officer Wilson pulled Mr. Timmons' right arm from underneath Mr. Timmons' body and as he was attempting to place the right hand behind Mr. Timmons' back, Mr. Timmons sustained a "spiral, comminuted fracture" of his right humerus. None of the officers realized that Mr. Timmons was injured and they proceeded to place the handcuffs on Mr. Timmons' right wrist and then placed Mr. Timmons in the back of a police car for transport to jail. While Mr. Timmons was in the police car at the scene, paramedics examined him to see if he had sustained injuries during the vehicular accident. It was during this examination that the paramedics determined that Mr. Timmons was in shock and that he had sustained an injury to his right arm, whereupon Mr. Timmons was transported to receive medical care.

On January 14, 2005, Mr. Timmons filed this action against the Metropolitan Government alleging that the Metropolitan Government's employees, the police officers, were negligent in failing to recognize that he was in diabetic shock and were negligent in using force against a "helpless and unconscious man." Following discovery, the Metropolitan Government filed for summary judgment, which the trial court granted. Mr. Timmons appealed that judgment and this Court determined that there was a genuine dispute concerning material facts regarding whether the police officers acted reasonably under the circumstances; this Court reversed the grant of summary judgment and remanded the matter for trial. *See Timmons v. Metropolitan Government of Nashville*, No. M2006-01828-COA-R3-CV, 2007 WL 2405132 (Tenn. Ct. App. Aug. 23, 2007).

On remand, a bench trial was held over a period of three days, following which the trial court determined that Mr. Timmons' injuries were the result of the officers' negligent acts and omissions, for which the Metropolitan Government was liable, and awarded a judgment in favor of Mr. Timmons in the amount of $140,000, plus $2,722.65 in discretionary costs. The trial court's findings were set forth pursuant to Tenn. R. Civ. P. 52.01 in a detailed Memorandum Opinion dated June 23, 2008. In pertinent part, the trial court found that the force employed by Officer Wilson, who pulled

---

[2] Officer Pilarski's and Officer Thornton's testimony differed in some respects at trial. Officer Thornton stated that it was Officer Pilarski who took Mr. Timmons to the ground. Officer Pilarski testified that it was not him and that he was unaware who had taken Mr. Timmons to the ground, and that Mr. Timmons was already on the ground when he reached the driver's side of the vehicle. The trial court found Officer Thornton's version of events to be more credible, a decision which is entitled to great weight on appeal. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

Mr. Timmons' right arm from underneath his body, was not excessive force,[3] that the force used to handcuff Mr. Timmons was the result of another officer's negligent decision to place him in the prone position, and that the injuries sustained by Mr. Timmons were the result of the negligent decision to place Mr. Timmons in the prone position which necessitated the use of the more risky "prone handcuffing" technique. The trial court also found that Mr. Timmons was not contributorily negligent because he was incapacitated due to insulin shock, that Mr. Timmons was essentially unconscious and unable to comprehend the officers' questions or to voluntarily communicate, and that Mr. Timmons was not being combative or actively resisting the officers. Following the entry of a judgment in accordance with the foregoing findings, the Metropolitan Government filed this appeal.

## ANALYSIS

On appeal, the Metropolitan Government argues that the trial court erred in holding it responsible under a negligence theory because, it contends, its employees, the police officers, acted consciously and volitionally when they used an unreasonable amount of force which constituted the intentional tort of battery for which the Metropolitan Government retains immunity under the Governmental Tort Liability Act. The Metropolitan Government also argues that the trial court erred in assigning no portion of fault to Mr. Timmons for his injuries based upon his conscious decision to continue driving when he felt the onset of insulin shock and for his resistance to the police officers' attempts to remove him from his vehicle.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

---

[3] This was a modification of the court's ruling from the bench.

## THE GOVERNMENTAL TORT LIABILITY ACT

The Tennessee Governmental Tort Liability Act (the Act) codifies the general common law rule that "'all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities,' Tenn. Code Ann. § 29-20-201(a), subject to statutory exceptions in the Act's provisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). But for certain enumerated exceptions, Tenn. Code Ann. § 29-20-205 of the Act provides a general waiver of immunity from suit for personal injury claims for injuries proximately caused by a negligent act or omission of an employee acting within the scope of his employment. *Id*. One of the enumerated exceptions is the intentional tort exception, which includes the intentional tort of battery. *Id*. Accordingly, the Metropolitan Government may be held liable for the actions of its police officers if the acts or omissions of the officers caused injury to Mr. Timmons while the officers were acting within the scope of their employment. *See id*. Conversely, the Metropolitan Government is immune from liability, and cannot be held liable for injuries sustained by Mr. Timmons if the injuries were the result of the intentional tort of battery by the officers. *See id*.

## MR. TIMMONS' CLAIM OF NEGLIGENCE

Mr. Timmons' negligence claim centers on what he contends were the negligent acts and omissions of two police officers. Officer Pilarski who made the decision to place Mr. Timmons on the ground in the prone position, which necessitated that he be handcuffed pursuant to the prone cuffing technique, and Officer Wilson who was attempting to place the handcuff on Mr. Timmons' right wrist when the humerus in his right arm fractured.

A negligence cause of action has five essential elements: (1) a legally recognized duty owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) an injury or loss, (4) causation in fact, and (5) legal cause. *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005); *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005); *Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988).

The first element of duty is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). "[T]he existence or nonexistence of a duty owed to plaintiff is entirely a question of law for the Court." *Carson v. Headrick*, 900 S.W.2d 685, 690 (Tenn. 1995). It is undisputed that the police officers had a duty to abide by the applicable policies and procedures of the Metropolitan Police Department as they attempted to arrest and handcuff Mr. Timmons.

The 2001 Lesson Plan for the Metropolitan Nashville Police Department Training Division was introduced as evidence of the Department's applicable policies and procedures. In the section entitled "Defensive Tactics: Removing/Placing Subjects:Vehicle," the Plan instructs officers "to remove a resisting, drunken subject from a vehicle" and handcuff them by placing the subject's chest against the vehicle for support. This technique is to be employed if the subject being arrested is not

believed to be a high risk to the arresting officers or others. Alternatively, the Defensive Tactics section instructs that it is appropriate for officers to employ the "prone cuffing" technique – where the subject is placed on the ground face down – when "the subject being arrested is *though[t]* to be a high risk to officers or others." (Emphasis added). There are four instances when the "prone position" is considered appropriate: when the subject is a violent felon, is armed, has a history of resisting arrest, or actively resists arrest. The section also instructs that the "crime or danger must be serious enough to warrant placing the subject on the ground." Mr. Timmons was not a violent felon, he was not armed and he did not have a history of resisting arrest. Accordingly, we find, as a matter of law, that the police officers had a duty to evaluate whether Mr. Timmons was actively resisting arrest before deciding to employ the prone handcuffing technique.

With that determination, the question is whether the officers failed to exercise reasonable care under the circumstances in making the decision to employ the prone handcuffing technique. *See McCall*, 913 S.W.2d at 153 (quoting W. Keeton, *Prosser and Keeton on the Law of Torts*, § 356 (5th ed. 1984)) (holding that what a defendant, or its employees acting in the scope of their employment, must do, or must not do, "is a question of the standard of conduct required to satisfy the duty"). The standard of conduct is the "standard of reasonable care in light of the apparent risk." *Id.* (citing *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994) ("As in all cases, there is a duty to exercise reasonable care under the circumstances."); *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) ("All persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others."); *Prosser and Keeton*, §356). Defendants who do not exercise reasonable care, breach their duty. *Id.* at 153-54 (citing *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992)).

As the Department's policies instruct, the only policy justification for the use of the prone handcuffing technique would be that the officers reasonably *thought* Mr. Timmons was "actively resisting" their attempts to place him under arrest for driving under the influence. While the officers were attempting to extract Mr. Timmons from his vehicle, which took a great deal of effort by two officers, most of the officers believed that Mr. Timmons was passively resisting arrest, meaning they did not believe that he was "actively" resisting arrest. Officer Pilarski, however, believed Mr. Timmons was actively resisting arrest. These differing opinions are evident by the reports made by officers following the arrest. The Police Department's "Use of Force" form, commonly referred to as "Form 108," was completed by three of the officers and filed with the Department following this unfortunate incident. The Use of Force form is to be completed following any incident in which officers use force. The form provides boxes for the officers to check to indicate the subject's level of resistance. Two of the officers, Conley and Thornton, reported that Mr. Timmons was passively resisting arrest. Officer Pilarski checked two boxes, indicating that he believed Mr. Timmons exhibited both passive resistance and active resistance. Officer Thornton, the one who extracted Mr. Timmons from the vehicle, additionally testified at trial that he did not believe Mr. Timmons was actively resisting.

The trial court made the express factual finding that Mr. Timmons did not actively resist arrest. The record fully supports the trial court's finding that Mr. Timmons was not intending to

resist arrest; he was simply suffering from the effects of insulin shock and was unaware of his actions or the officers' instructions. The record also supports the trial court's finding that Mr. Timmons was not "actively resisting" the officers; instead he was merely exhibiting "reflexive reactions" by rigidly sitting in his car, resisting the officers' repeated efforts to remove him from the car, and "pulling his arms" toward his body as they removed his hands from the steering wheel, which he was firmly grasping. Accordingly, we affirm the trial court's conclusion that Officer Pilarski negligently evaluated the resistance and threat posed by Mr. Timmons, which led to the erroneous conclusion that Mr. Timmons was actively resisting arrest and the decision to place Mr. Timmons on the ground, thereby necessitating the use of the prone handcuffing technique.

A defendant's negligent conduct is the cause in fact of the plaintiff's injury "if, as a factual matter, it directly contributed to the plaintiff's injury and without it plaintiff's injury would not have occurred." T.P.I. - Civil 3.21 (8th ed. 2008) (citing *Hale v. Ostrow*, 166 S.W.3d 713, 718-19 (Tenn. 2005)). An actor's conduct is the legal cause of a person's injury if the actor's conduct was "a substantial factor in bringing about the harm," and if there is no "legal rule or policy that would operate to relieve the actor from liability." *Lowery v. Franks*, No. 02A01-9612-CV-00304, 1997 WL 566114, at *5 (Tenn. Ct. App. Sept. 10, 1997) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)). Additionally, the harm that occurred must have been reasonably foreseeable by a person of ordinary intelligence and prudence. *Id.* (citing *McClenahan*, 806 S.W.2d at 775).

We find Officer Pilarski's negligent evaluation of the type of resistance and the threat Mr. Timmons posed to the officers significant because testimony presented at trial reveals the importance of evaluating subjects to determine whether they were intoxicated or suffering from a medical ailment. That testimony also revealed the significantly greater risks associated with the prone handcuffing technique, meaning the risks of injury to the subject being handcuffed in the prone position as opposed to the standing position. Based on the evidence in the record, we affirm the trial court's finding that the use of the prone handcuffing technique posed additional risks of injury to Mr. Timmons and that injury from the use of the prone handcuffing technique was foreseeable.

The decision to place Mr. Timmons on the ground and handcuff him in the prone position was also a substantial factor in bringing about the injuries he sustained. When the decision was made to place Mr. Timmons on the ground, this led to his right arm being beneath his body, which led to Officer Wilson having to exert more force to pull Mr. Timmons' right arm behind his back, which is when the fracture to the right arm occurred. The record reveals that it was reasonably foreseeable that Mr. Timmons may be injured by being handcuffed in the prone position, and it is undisputed that Mr. Timmons suffered a "spiral, comminuted fracture" as the prone handcuffing technique was being employed. Therefore, the negligent decision that necessitated that Mr. Timmons be handcuffed in the prone position was both the cause in fact and the legal cause of his injuries.

We acknowledge the vigorous argument presented by the Metropolitan Government that the actions by the police officers constituted the intentional tort of battery, not a negligent act. This argument is principally based on the decision in *City of Mason v. Banks*, 581 S.W.2d 621 (Tenn.

1979). In *Banks*, the Court addressed whether a municipal corporation was required to indemnify an employee of the police department against whom judgment was recovered from conduct occurring within the scope of the officer's employment. *Id*. at 622. The dispositive "factual issue" in *Banks* was whether the officer "engaged in willful wrongdoing," or "whether he was justified, although negligent, in using force that ultimately blinded respondent in his left eye." *Id*. at 623. We find the facts of this case are distinguishable from those in *Banks*, and therefore, *Banks* is not controlling.

There are two key distinctions between *Banks* and this case. In *Banks,* the officer used a "blackjack" to subdue the subject, who was attempting to escape from the police car where he had been placed following his arrest.[4] *Id*. The *Banks* Court commented:

> It is clear from the record that [the officer] intended to hit respondent in the head with his blackjack; it was his voluntary and conscious act. He was privileged to use only that force necessary to effect the arrest and was liable for the amount of the force that was excessive. *See* Restatement (Second) of Torts §§ 71, 133. *Hence [the officer] was liable for the damages caused by his excessive and unprivileged use of force under the intentional tort of battery*.

*Id*. at 626 (emphasis added). The officer's actions in *Banks* were found to be "willful" and "excessive." *Id*. Here, the trial court found that Mr. Timmons' injuries were the result of the officer's negligent evaluation of the extent of Mr. Timmons' resistance to being arrested. As a result of the negligent assessment of the extent of Mr. Timmons' resistance, the officers followed a Department policy which authorized handcuffing the subject in the prone position. Mr. Timmons' injuries flowed from the negligent assessment concerning his resistance to being arrested, not from an intentional decision to use excessive force. Furthermore, the trial court in *Banks* made the factual determination that the police officer used "excessive force in effecting the arrest" and, therefore, the municipality was not liable. *Id*. at 626. Here, the trial court made the opposite finding, holding that the injuries were the result of the officers' negligence and that the officers did not use "excessive force." As a consequence, to prevail on this issue the Metropolitan Government must establish that the evidence preponderates against the trial court's finding that the officer's were negligent and that the force used was "excessive." We have determined the evidence does not preponderate against the trial court's findings.

Based on the foregoing, Mr. Timmons has successfully established each of the essential elements of a negligence claim against the Metropolitan Government, and the Metropolitan Government has failed to establish that the evidence preponderates against the findings that the officers' actions constituted negligence and that they did not intentionally use excessive force.

---

[4]In *Banks*, the underlying action from which the suit to indemnify arose was a 42 U.S.C. § 1983 action. *Banks*, 581 S.W.2d at 626. Notably, while "isolated incidents of negligence" are not cognizable under § 1983, excessive force actions when a "policeman's conduct was conscious, volitional, and purposeful" have been held actionable under § 1983. *Id*. at 626-27.

We now consider the contention that the trial court erred by finding that Mr. Timmons was not comparatively negligent. The Metropolitan Government argues that Mr. Timmons was comparatively negligent in two ways. One, Mr. Timmons was negligent when he continued driving despite feeling the onset of an episode of insulin shock. Two, Mr. Timmons was negligent by resisting the officers' attempts to remove him from his car and handcuff him.

Pursuant to the comparative fault doctrine, the court may compare the fault of the tortfeasor to the fault of the plaintiff. *Lewis v. State*, 73 S.W.3d 88, 94 (Tenn. Ct. App. 2001). "If the plaintiff's own negligence is less [than the tortfeasor's fault], [the plaintiff] may recover, but the damages he can collect are reduced in proportion to the percentage of the total negligence that can be attributed to [the plaintiff]." *Id.* The degree of fault of each party in producing the injury is a circumstance for the finder of fact to consider and determine. *Id.* at 94-95 (quoting *Prince v. St. Thomas Hospital*, 945 S.W.2d 731 at 736 (Tenn. Ct. App. 1996)). The apportionment of fault by the trier of fact is entitled to a presumption of correctness on appeal. *Id.* at 95.

The trial court found that "the decision by Mr. Timmons to continue driving had nothing to do with the negligence of the officers in deciding to throw him on the ground and use the prone handcuffing technique." The trial court further found that a conscious decision was required to be comparatively at fault, and as Mr. Timmons was suffering from the effects of insulin shock and "essentially unconscious," no fault could be attributed to him. Based upon these and other findings, the trial court apportioned 100% of the fault against the police officers, and thus against their employer, the Metropolitan Government.

The Metropolitan Government asserts that Mr. Timmons is comparatively at fault due to his decision to continue driving despite experiencing the symptoms of insulin shock. We believe the facts of this case are analogous to that in the matter of *Mercer v. Vanderbilt*, 134 S.W.3d 121, 125 (Tenn. 2004). *Mercer* was a medical malpractice case wherein a patient's negligence was the cause of injuries and the need for medical attention at Vanderbilt Hospital, where he was taken following the accident. *Id.* The patient was injured in a vehicle accident of his own fault, a result of his driving while under the influence of alcohol. The patient suffered severe brain damage while being treated at the hospital, which was due to the negligence of hospital personnel who deprived him of oxygen. *Id.* at 126. In its assessment of the fault of the hospital versus that of the patient, the court noted that patients, even those who negligently injure themselves are entitled to subsequent non-negligent medical treatment. *Id.* (quoting *Fritts v. McKinne*, 934 P.2d 371, 374 (Okla. Civ. App. 1996) (quoting *Martin v. Reed*, 409 S.E.2d 874, 877 (Ga. Ct. App. 1991))). The court went on to state that such a patient was also entitled to "an undiminished recovery if such subsequent non-negligent treatment is not afforded." *Id.* (quoting *Fritts*, 934 P.2d at 374) (quoting *Martin*, 409 S.E.2d at 877)). Upon that reasoning, the *Mercer* court held that "a patient's negligent conduct that occurs prior to a health care provider's negligent treatment and provides only the occasion for the health care provider's subsequent negligence may not be compared to the negligence of the health care provider." *Mercer*, 134 S.W.3d at 130.

In this case, Mr. Timmons was suffering the effects of insulin shock. Although insulin shock was the cause of the wreck and the reason for the police officers to come to the scene, Mr. Timmons' medical condition, and his acts and omissions while essentially unconscious, cannot constitute acts of negligence. When the police arrived and at all times material thereafter, Mr. Timmons was not conscious, and due to his medical condition he was not aware of his actions. We, therefore, find that the evidence does not preponderate against the trial court's finding that Mr. Timmons was not at fault as it pertained to the injuries he suffered while being handcuffed in the prone position.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against the Metropolitan Government of Nashville and Davidson County.

_____
FRANK G. CLEMENT, JR., JUDGE