IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2025 Session

## JOSPHEEN GUIRGUIS ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 18C-885 Thomas W. Brothers, Judge**

_____

**No. M2024-01310-COA-R3-CV**

_____

The plaintiffs were injured by gunfire when the police were called to their residence to stop a domestic incident and burglary in progress. The plaintiffs sued the defendant city, arguing that their employee police officers were negligent in failing to adhere to department policies and rules. Some years after the case had been filed, the city filed a motion for summary judgment on the basis that the claims involved civil rights and that the city's governmental immunity was not removed under the Tennessee Governmental Tort Liability Act. The trial court agreed and granted the city's motion, dismissing the case. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

W. Gary Blackburn, Nashville, Tennessee, for the appellants, Jospheen Guirguis, Martena G., and Mariam K.

Andrew D. McClanahan and Peter G. Vizcarrondo, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed for purposes of this appeal. In the early morning on May 16, 2017, police officers employed by the Metropolitan Nashville Police Department ("Metro Police") were dispatched to a home for a suspected burglary in progress. The officers were advised that a husband was breaking into the family home despite an order of protection in place. Three separate patrol cars arrived at the scene, containing four officers: Daniel Garret, Christopher Holden, David Moser, and Jonathan Sheppard. The officers had difficulty locating the scene until Officer Garrett heard a female scream. Officer Garrett then observed Michel Guirguis ("Mr. Guirguis") and Jospheen Guirguis ("Mrs. Guirguis") on the front porch of their residence engaged in a struggle. Officer Garrett exited his vehicle, identified himself as a police officer, and gave repeated verbal commands for the individuals to stop and "show me your hands."

It was still dark outside, but upon moving closer to the scene, Officer Garrett observed that Mr. Guirguis was armed with a gun. Officer Garrett then drew his service weapon and repeatedly asked Mr. Guirguis to drop his weapon. Mr. Guirguis ignored the commands and pointed his firearm at Officer Garrett, which Officer Garrett perceived as an imminent threat on his life. Officer Garrett and Mr. Guirguis then exchanged gunfire, though Mr. Guirguis's shots may have been into the air or ground or warning shots. It is unknown who fired first. During the gunfire, Mr. Guirguis, Mrs. Guirguis, and her minor child, Martena G. ("Martena") were all standing near the door of the home. Mrs. Guirguis and Martena each sustained a gunshot wound during the gunfire.

Officer Garrett's firearm jammed, and he took cover. The Guirguis family then went inside the home. A second round of gunfire between Mr. Guirguis and the other officers occurred. Mr. Guirguis was eventually wounded. Later investigation revealed that three of the four officers discharged their firearms, along with Mr. Guirguis. A police investigation concluded that Mrs. Guirguis and Martena were struck by bullets from Officer Garret's service weapon.

On April 10, 2018, Plaintiff/Appellant Mrs. Guirguis, individually and as next friend of Martena, and her other child, Mariam K. ("Mariam," and together with Mrs. Guirguis and Martena, "Appellants") filed a complaint against the Defendant/Appellee Metropolitan Government of Nashville and Davidson County ("Metro") in the Davidson County Circuit Court ("the trial court").[1] The complaint alleged that the officers shot at Mr. Guirguis despite knowing the close proximity of all Appellants, in violation of the officers' knowledge and training regarding Metro Police departmental policy. Appellants therefore alleged that the officers committed negligence in firing their weapons in a manner that resulted in property damage, physical injuries to Mrs. Guirguis and Martena, and emotional

---

[1] The complaint alleged that Mariam was also present during the gunfire and was the individual that called the police. As a result, the complaint alleged that Mariam suffered from emotional injuries. However, neither Metro's statement of undisputed material facts nor Appellants' response include any facts as they relate to the claims by Mariam.

injuries to all Appellants. The complaint further asserted that Metro was vicariously liable for the negligent acts and omissions of its employees.

Metro filed an answer on June 8, 2018, admitting that the trial court had subject matter jurisdiction, but denying that Appellants were entitled to relief.

The case languished for nearly six years while the parties apparently engaged in discovery, until April 29, 2024, when Metro filed a motion for summary judgment on the ground that the trial court lacked subject matter jurisdiction under the Tennessee Governmental Tort Liability Act ("GTLA"). According to Metro, Appellants' claim sounded in civil rights and the State had not waived immunity for such claims under the GTLA. In the accompanying memorandum, Metro argued that claims of excessive force sound in civil rights even when unintended persons are harmed or unintended consequences occur. In support of its motion, Metro filed a statement of undisputed material facts.

Appellants responded in opposition on June 21, 2024. Therein, Appellants asserted that Metro waived its argument by admitting to subject matter jurisdiction. Appellants further argued that the cases cited by Metro were inapposite, as they involved situations where federal civil rights claims had been filed or intentional acts were alleged. Instead, Appellants asserted that their claim was merely that the officers acted negligently in firing their weapons while Mrs. Guirguis and Martena were in close proximity. Although Appellants objected to many facts as irrelevant, Appellants admitted that Metro's statement of facts was largely undisputed for purposes of the motion for summary judgment.[2]

Metro filed a reply in support of its motion for summary judgment on June 26, 2024. Therein, Metro asserted that it had raised the civil rights exception as an affirmative defense in its answer, and that, in any event, subject matter jurisdiction could not be waived or consented to. Metro then reiterated that the gravamen of Appellants' claim was a civil rights violation, given that the officers fired their weapons intentionally, rather than by mistake, accident, or inadvertence.

The trial court issued its final order granting Metro's motion for summary judgment on August 7, 2024. Therein, the trial court ruled that Metro did not waive its argument because GTLA immunity was an issue of subject matter jurisdiction that could not be waived or conferred by consent. The trial court also concluded that the resolution of Metro's motion depended on the gravamen of Appellants' claim, explaining,

> The Court finds that the discharge of the firearm by a police officer constitutes the use of deadly force. Deadly force is clearly recognized as a seizure, subject to the reasonableness requirement of the Fourth Amendment.

---

[2] We have therefore taken the background of this appeal from those undisputed facts.

> *See **Kilnapp v. City of Cleveland, Ohio***, No. 22-4059, 2023 WL 4678994, at
> *4–5 (6th Cir. July 21, 2023) (internal citations omitted). The civil rights
> exception to the GTLA prohibits a plaintiff from bringing a state law
> negligence claim that arises out of the same facts and circumstances giving
> rise to the violation of the civil right. *See **Cochran v. Town of Jonesborough***,
> 586 S.W.3d 909 (Tenn. Ct. App. 2019), *appeal denied* (Aug. 4, 2019). In
> ***Cochran***, the Court of Appeals held that in order to determine whether
> immunity bars a plaintiff's claim, the Court must determine the substantial
> point, real purpose, or object of the action. ***Id.*** at 914–21 (internal citations
> omitted). For the purposes of interpreting Tenn. Code Ann. § 29-30-205(2),
> the term "civil rights" includes claims arising under federal law and the U.S.
> Constitution. The essential question of this motion then is whether the GTLA
> prohibits this case from being brought against Metro because the cause of
> action sounds in a civil rights claim against the officers.

The trial court further noted that United States Supreme Court precedent holds that a
seizure occurs "even when an unintended person or thing is the object of the detention or
taking," so long as the action is willful. Citing **Kilnapp**, the trial court ruled that "the
appropriate inquiry is whether the challenged conduct objectively manifests an intent to
restrain." Because the officers in this case intentionally fired their weapons, the trial court
held that Mrs. Guiguis and Martena were the "unintended victims of the officers'
intentional actions, and their civil rights are protected under the Fourth Amendment from
the officers' alleged use of excessive force. As such, the gravamen of the [c]omplaint
appears to sound in civil rights under the Fourth Amendment." So the trial court ruled that
the civil rights exception to the GTLA removal of immunity was applicable and the court
lacked subject matter jurisdiction over Appellants' claim. From this order, Appellants now
appeal.

## II. ISSUE PRESENTED

Appellants raise the following issue: "Whether a party may allege a tort and facts to
support it, but lose jurisdiction under the [GTLA] because a case six (6) years later might
allow a claim to also be stated as a civil rights complaint?" In our view, the dispositive
issue is as follows: Whether the trial court erred in granting Metro's motion for summary
judgment on the basis that Appellants' claim sounds in civil rights under the GTLA?

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no
presumption of correctness. ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d
235, 250 (Tenn. 2015) (citing ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997); ***Abshure
v. Methodist Healthcare-Memphis Hosp.***, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of
our review, we must "take the strongest legitimate view of the evidence in favor of the

nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by* *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by* *Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, neither party asserts that any facts are disputed. Instead, the primary question is whether the GTLA civil rights exception is applicable. The interpretation of statutes and their application to particular facts are questions of law generally amenable to summary judgment. *Metro. Dev. & Hous. Agency v. Trinity Marine Nashville, Inc.*, 40 S.W.3d 73, 76 (Tenn. Ct. App. 2000). The trial court's conclusions as to the interpretation of a statute are likewise not entitled to a presumption of correctness. *Goodman v. City of Savannah*, 148 S.W.3d 88, 91 (Tenn. Ct. App. 2003).

## IV. ANALYSIS

In the present case, the central dispute concerns whether Appellants' negligence claim arises from a violation of their "civil rights" such that an exception within the GTLA applies to preserve Metro's governmental immunity. Accordingly, a brief overview of the GTLA is beneficial here.

The GTLA provides, in relevant part, that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a); *see also* *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001) ("[T]he General Assembly enacted the Tennessee Governmental Tort Liability Act . . . to codify the general common law rule that all governmental entities shall be immune from suit[.]"). The GTLA also provides, however, that removal of governmental immunity is appropriate under certain circumstances. For example, Tennessee Code Annotated section 29-20-205 provides that immunity from suit "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Thus, a plaintiff who has allegedly suffered an injury at the hands of a negligent government employee acting in the scope of his or her employment may bring suit against the relevant government entity.

Nonetheless, section 29-20-205 also goes on to provide for specific circumstances under which immunity is preserved. As is relevant to this case, section 29-20-205(2) explains that immunity is not removed where "the injury arises out of: false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, *or civil rights*[.]" Tenn. Code Ann. § 29-20-205(2) (emphasis added). Consequently, this Court has previously held that where the "underlying acts which [a plaintiff] alleges to be negligent . . . [are] predicated on intentional tortious conduct involving the violation of [the plaintiff's] civil rights" by government employees, the "'civil rights exception' in Tenn. Code Ann. § 29-20-205(2)" is applicable. ***Jackson v. Thomas***, No. M2010-01242-COA-R3-CV, 2011 WL 1049804, at *7 (Tenn. Ct. App. Mar. 23, 2011) (citing ***Campbell v. Anderson Cnty.***, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010)).

As the GTLA is in derogation of the common law, it is to be strictly construed and confined to its express terms. ***Moreno v. City of Clarksville***, 479 S.W.3d 795, 809–10 (Tenn. 2015). As a result, "[t]he GTLA's waiver of immunity is 'narrowly confined in its scope.'" ***Hughes v. Metro. Gov't of Nashville and Davidson Cty.***, 340 S.W.3d 352, 361 (Tenn. 2011) (quoting ***Doyle v. Frost***, 49 S.W. 3d 853, 858 (Tenn. 2001)). We keep these principles in mind as we address Appellants' arguments in this appeal.

In essence, Appellants assert that the civil rights exception is inapplicable to this case because they have alleged that their injuries resulted from the negligence of Metro's employees, rather than intentional acts. Appellants further point out that they never filed any federal civil rights claim suggesting that their cause of action sounded in civil rights. So they assert that the trial court erred in recasting their negligence claim as a claim arising from civil rights.

Two relatively recent cases involving the civil rights exception are helpful to our analysis on this issue. First, in ***Cochran v. Town of Jonesborough***, 586 S.W.3d 909 (Tenn. Ct. App. 2019), this Court considered a complaint that a town was negligent in training and supervising a police officer who used excessive force during an arrest of the plaintiff. ***Id.*** at 911–12. Like in this case, the plaintiff asserted that his claim sounded in negligence, rather than civil rights. ***Id.*** at 914. The defendant argued, however, that the plaintiff was raising the same claims that had previously been raised in a federal civil rights action and that other cases have held that claims involving negligence may still sound in civil rights under the GTLA. ***Id.*** 914–15.

Ultimately, we agreed with the defendant. As an initial matter, we noted that a plaintiff's characterization of his or her claim is not dispositive. Instead, "in order to determine whether immunity bars [a] claim, we must determine the substantial point, the real purpose, or the object of his action." ***Id.*** at 919 (citation and quotation marks omitted).

Next, we noted that "the term 'civil rights' in section 29-20-205(2) has been construed 'as including claims arising under the federal civil rights laws and the U.S. Constitution.'" *Id.* (quoting *Jackson*, 2011 WL 1049804, at *6). Thus, so long as the "underlying act" is "predicated on intentional tortious conduct" in violation of the plaintiff's civil rights, the claim arises from civil rights such that section 29-20-205(2) is applicable. *Id.* at 914 (quoting *Jackson*, 2011 WL 1049804, at *7). Moreover, "excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment" and "freedom from excessively forceful or unduly tight handcuffing is a clearly established right." *Id.* at 919 (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518–19 (6th Cir. 2016)).

This Court next focused on whether claims of negligent hiring, training, or supervision could arise from civil rights. Despite some persuasive authority that suggested the contrary, we concluded that, given the strict construction required of the GTLA and the weight of Tennessee and federal authority on this issue, even claims of negligence may arise from civil rights when they are "inextricably" linked to civil rights claims. *Id.* at 917–20 (quoting *Howard v. Knox Cnty.*, No.: 3:15-CV-6-TAV-CCS, 2016 WL 9455169, at *11 (E.D. Tenn. Sept. 7, 2016). Thus, we held that the plaintiff's claim, though characterized as involving only negligence, "stem[med] from well-established civil rights, regardless of how [the plaintiff] chose to characterize those claims in his state action." *Id.* at 919.

Finally, we rejected the plaintiff's assertion that the dismissal of the plaintiff's federal action was evidence that there was no civil rights violation. First, we noted that nothing in section 29-20-205(2) required an express finding by a federal court that civil rights were implicated. *Id.* at 920. Instead, we held that the "immunity offered by section 29-20-205 is broad" and explained that no caselaw has held that the plaintiff must be successful in a separate federal civil rights lawsuit in order for the exception to apply. *Id.*

This Court followed the holding from *Cochran* in *Nichols v. Metropolitan Nashville Airport Authority*, No. M2020-00593-COA-R3-CV, 2021 WL 1426992 (Tenn. Ct. App. Apr. 15, 2021). *Nichols* involved a claim by the plaintiff that he was injured when airport officers used excessive force on him during an arrest. *Id.* at *1. To avoid the civil rights exception to the GTLA's waiver of immunity, the plaintiff argued that the officers negligently assessed the amount of force needed to detain him, not that they intentionally utilized excessive force. The plaintiff also alleged that the officers had been negligently trained in proper restraint techniques. *Id.* at *4. After the *Cochran* decision was published, the trial court dismissed the claim,[3] and we affirmed. *Id.* at *5.

---

[3] The trial court initially denied the motion to dismiss, citing a prior case. *Id.* at *1 *(*citing *Timmons v. Metro. Gov't of Nashville & Davidson Cnty.*, 307 S.W.3d 735, 741 (Tenn. Ct. App. 2009) (involving a claim of injury due to handcuffing, but where no party argued that the civil rights exception was applicable)). The defendant filed a motion to alter or amend following the publication of *Cochran*, which resulted in the trial court altering its decision. *Id.*

In reaching this result, we explained that "the common thread in these claims is that the airport officers used more force than was necessary under the circumstances." *Id.* at *4 (internal quotation marks omitted). Moreover, we held that the intentional conduct necessary to implicate a civil rights claim merely requires that the conduct was "conscious, volitional and purposeful[,]" rather than that the officer had a specific intent to deprive the plaintiff of a civil right. *Id.* (quoting *City of Mason v. Banks*, 581 S.W.2d 621, 627 (Tenn. 1979)). We therefore affirmed the trial court's ruling that the plaintiff's excessive force claim arose from civil rights, the plaintiff's negligent failure to train claim was inextricably linked to this civil rights claim, and that the defendant retained its immunity under the GTLA. *Id.* at *5; *see also, e.g.*, *Betty H. v. Williamson Cnty.*, No. M2022-00300-COA-R3-CV, 2023 WL 5193537, at *5 (Tenn. Ct. App. Aug. 14, 2023) (affirming the dismissal of a claim for negligent hiring, supervision, and training seeking to hold a county vicariously liable for an assault and a battery by an employee of a detention center, as the claim arose from civil rights); *Siler v. Scott*, 591 S.W.3d 84 (Tenn. Ct. App. 2019) (holding that a negligence claim against a county that resulted in the plaintiff's assault and battery sounded in civil rights and that immunity was not waived under the GTLA); *Merolla v. Wilson Cnty.*, No. M2018-00919-COA-R3-CV, 2019 WL 1934829, at *5 (Tenn. Ct. App. May 1, 2019) ("In our view, 'the substantial point' of Ms. Merolla's claim therefore involves violations of civil rights, regardless of Ms. Merolla's insistence that the conduct was merely negligent.").

Here, the undisputed facts demonstrate that Mrs. Guirguis and Martena were wounded when Officer Garrett discharged his weapon in his attempt to subdue and seize Mr. Guirguis. There is no proof in the record that Officer Garrett or the other officers intended to seize either Mrs. Guirguis or Martena, but they appear to have been the unintentional victims of gunfire. Thus, Appellants claim that it was the officers' negligence that led them to be victims in this situation. The question is whether these facts fit within the above parameters such that the civil rights exception is implicated.

Strikingly similar facts were at issue in *Kilnapp v. City of Cleveland*, No. 22-4059, 2023 WL 4678994 (6th Cir. July 21, 2023). In that case, a police officer filed a federal civil rights lawsuit after she was injured by gunfire from one of her fellow officers while on a call. *Id.* at *1. In support of her claim, the plaintiff argued that the other officer used excessive force in violation of the Fourth and Fourteenth Amendments. *Id.* at *2. In contrast to this case, in *Kilnapp*, the defendant argued that the plaintiff did **not** make out a civil rights claim because he did not intend to shoot the plaintiff, and the plaintiff was not the subject of his intended seizure under the Fourth Amendment. *Id.* at *4.

The United States Circuit Court for the Sixth Circuit rejected this argument, however. First, the court explained that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1 (1985)). The test in this situation requires that "the force must be applied with an

"intent to restrain, as opposed to force applied by accident or for some other purpose." *Id.* (quoting *Torres v. Madrid*, 141 S. Ct. 989, 991 (2021)). As the court explained

> Thus, "[t]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain." [*Torres*, 141 S. Ct. at 991.] Importantly, and relevant in this case, "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) (citations omitted). In *Brendlin v. California*, 551 U.S. 249 (2007), the Supreme Court reaffirmed this *Brower* finding that an unintended person may be seized so long as the seizure is not the result of "an unknowing act." *Id.* at 254 (quoting *Brower*, 498 U.S. at 596); *see also* *Fisher v. City of Memphis*, 234 F.3d 312, 318 (6th Cir. 2000) (holding that a "violation of the Fourth Amendment requires an intentional acquisition of physical control . . . . [A] seizure occurs even when an unintended person or thing is the object of the detention or taking, so long as the detention or taking itself is willful."); *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 478 (6th Cir. 2022) (reasoning, through example, that unintended targets are protected under the Fourth Amendment: "[w]e have explained that when an officer seizes one person by shooting at a car, ... the officer seizes everyone in the car, even if the officer is unaware of the presence of passengers.").

*Kilnapp*, 2023 WL 4678994, at *4.

Under this framework, the Sixth Circuit concluded that the plaintiff made out a civil rights claim, as the defendant "fired his gun intentionally to seize [the third-party.] However, as a result of his actions, [the defendant] shot [the plaintiff] who was an unintended target." *Id.* at *5. Because the gun was fired intentionally, and not by accident, the fact that an unintended victim was seized did not remove the claim from the purview of the Fourth Amendment. *Id.* ("[T]he shooting of the gun was intentional, the individual that fell into contact with the bullet was unintentional. As discussed above, an unintentional victim is protected under the Fourth Amendment. Accordingly, [the plaintiff] properly alleged seizure under the Fourth Amendment.").

Like we did in *Cochran*, we find federal cases on the issue of what constitutes a claim arising from civil rights to be highly persuasive, particularly when they suggest an interpretation of the GTLA that preserves governmental immunity. *See Cochran*, 586 S.W.3d 909, 917–20 (relying on "the great[] weight of authority" provided by federal precedent, as this interpretation would "preserve immunity" under the GTLA). And applying the reasoning of the Sixth Circuit to this case, we reach the same conclusion as the *Kilnapp* court. Here, the undisputed facts demonstrate that the officers fired their weapons intentionally, rather than accidentally, in an effort to apprehend Mr. Guirguis. This use of deadly force was clearly a seizure that arises under the Fourth Amendment of the

United States Constitution. *Kilnapp*, 2023 WL 4678994, at \*4; *see also* **Cochran**, 586 S.W.3d at 919 (quoting **Jackson**, 2011 WL 1049804, at \*6). And while Appellants assert that the officers' negligent failure to adhere to their training and education resulted in hitting Mrs. Guirguis and Martena rather than the intended target, the "underlying act" of firing their weapons was intentional, not accidental. *See Nichols*, 2021 WL 1426992, at \*5; *see also* **Fisher**, 234 F.3d at 317 ("[T]he intent in question is the intent to commit the act, not the intent that a certain result be achieved."). Instead, only the victim was unintended. Mrs. Guirguis and Martena were therefore "seized" under the Fourth Amendment by Metro's police officers' intentional use of force.[4] The underlying act that predicates Appellants' claim therefore arises from civil rights under section 29-20-205(2).

Appellants argue, however, that the trial court erred in relying on *Kilnapp* because this precedent did not exist when this case was originally filed in 2018. Respectfully, we do not agree. First, while the *Kilnapp* case was issued after the filing of the present matter, its holding is based on long-standing federal precedent. *See, e.g.*, **Brower**, 489 U.S. at 596, 109 S. Ct. at 1381, 103 L. Ed. 2d 628 ("A seizure occurs even when an unintended person or thing is the object of the detention or taking[.]" (citing **Hill v. California**, 401 U.S. 797, 802–805, 91 S. Ct. 1106, 1110–11, 28 L. Ed. 2d 484 (1971))); **Fisher**, 234 F.3d at 318; **Campbell**, 47 F.4th at 478. Moreover, the trial court was not in error in considering the persuasive value of *Kilnapp* even though it was issued after this case was initiated, as a similar procedure occurred in *Nichols*: after first denying a motion to dismiss based on the civil rights exception, the trial court reconsidered its ruling after *Cochran* was published. *Nichols*, 2021 WL 1426992, at \*1; *see also* **Henderson v. United States**, 568 U.S. 266, 271, 133 S. Ct. 1121, 185 L. Ed. 2d 85 (2013) ("The general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision."). Here, *Kilnapp* merely provides guidance as to how federal courts analyze civil rights claims. The trial court therefore did not err in considering its persuasive effect as applied to this case.

We further conclude that Appellants' decision not to pursue a federal civil rights lawsuit makes no difference to our conclusion. Again, in *Cochran*, we emphasized that the characterization of the claim by the plaintiff was not dispositive of our analysis. *Cochran*, 586 S.W.3d at 918. In that case, however, the plaintiff had filed a federal civil rights lawsuit alleging the same operative facts as his state law claim. *Id.* at 920. But in keeping with *Cochran's* focus on the gravamen of the complaint, other courts have indicated that a federal civil rights claim is not a prerequisite to application of the civil rights exception. *See* **Devereux v. Knox Cnty.**, 15 F.4th 388, 397 (6th Cir. 2021) (noting that "under *Cochran*, the issue is whether the claims 'did not sound in civil rights,' and the presence of a civil rights claim is not strictly necessary for the civil rights exception to apply"); (quoting *Cochran*, 586 S.W.3d at 920). Indeed, in *Nichols*, the plaintiff maintained throughout the proceedings that only negligence was at issue, and nothing in that opinion indicates that the plaintiff ever filed a federal civil rights action. *Nichols*, 2021 WL

_____

[4] To the extent that Mariam was also present, the same analysis applies to her claim.

1426992, at *1. So the fact that Appellants chose not to pursue a federal civil rights claim does not release them from the ambit of the civil rights exception.

We also pause to note that beyond a fairly conclusory reference to section 29-20-205(2) in its answer, Metro failed to raise any substantive argument concerning the civil rights exception for the six years this case was pending prior to the filing of the motion for summary judgment. And Metro specifically admitted that the trial court had subject matter jurisdiction over the claim. But the Tennessee Supreme Court recently reaffirmed that the question of sovereign immunity implicates a court's subject matter jurisdiction and therefore "may be raised at any time in any court" and "cannot be conferred by consent or waiver." ***Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch***, 645 S.W.3d 160, 167 (Tenn. 2022) (citations omitted) (holding that the defendant did not waive its claim that sovereign immunity barred the suit because the issue involved subject matter jurisdiction); *see also* **Doyle v. Frost**, 49 S.W.3d 853, 857 (Tenn. 2001) (noting that sovereign immunity applies to both suits against the State and against governmental entities). So then, the trial court did not err in addressing this issue despite Metro's purported delay in raising it.

In conclusion, the trial court did not err in concluding that the claim for damages for physical and emotional injuries contained in Appellants' complaint arose from civil rights such that section 29-20-205(2) is applicable. Because Metro's governmental immunity was not removed under the GTLA, the trial court did not err in granting summary judgment in favor of Metro.

## V. CONCLUSION

The judgment of the Davidson County Circuit Court is affirmed, and this cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellants Jospheen Guiguis, individually and as next friend of Martena G. and Mariam K., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 11 -